**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

FEDERATED MUTUAL INSURANCE
COMPANY, a Minnesota corporation,

      Plaintiff,

v.                                                                              Case No. 09-CV-857 JEC/RHS

EVER-READY OIL CO., INC., SHANNY
LAVED, CARL SMITH, RON SIMS,
CHARLES OCAS, ACORN VENTURES, INC.,
P.P., INC., GIANT FOUR CORNERS, INC.,
RAY F. COLLINS and CATHY COLLINS,
individually, as guardians of ALISSA GARCIA,
a minor, and a co-personal representatives of
the wrongful death estates of RENEE COLLINS-
GONZALES, deceased, ALISA GARCIA,
deceased, JACQUELINE GONZALES, deceased,
and SELENA GONZALES, MAXINE GONZALES,
and RALPH GONZALES, individually, as co-personal
representatives of the Estate of PAUL GONZALES
and ASHLEY RENEE GONZALES,

      Defendants,

and

GIANT FOUR CORNERS, INC. and
GIANT INDUSTRIES, INC.,

      Third Party Plaintiffs,

v.

WESTERN STATES INSURANCE GROUP, INC.
D.B.A. DESERT STATES INSURANCE, and
MAGGIE ANDERSON

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on *Plaintiff Federated Mutual Insurance*

*Company's Motion for Summary Judgment on its Amended Complaint and Supporting*

*Memorandum* (Doc. 146), filed March 21, 2011 ("Motion").  The primary issues are whether

Plaintiff must provide insurance coverage for: (i) claims of illegal service of alcohol to a visibly

intoxicated individual (dram-shop liability),[1] negligent hiring, training, supervision, staffing and

retention, and spoliation against Ever-Ready Oil Company, Inc. ("ERO") in underlying state-

court litigation; (ii) the allegations of alter-ego and joint venture liability against Acorn

Ventures, Inc. ("Acorn"), and PRP, Inc. ("PRP") in the underlying state-court litigation; and (iii)

Giant's breach of contract and violation of New Mexico Unfair Practices Act cross-claims

against ERO, pled in the present declaratory action.  Having reviewed the pleadings, the

governing authority, and being otherwise fully informed, the Court finds that Motion is well-

taken, in part, and will be granted as to the claims for dram-shop liability, negligence and

spoliation against ERO; the alter-ego and joint venture liability allegations against Acorn and

PRP; and Giant's cross-claims against ERO.[2]

I.  <u>**Procedural Background**</u>

Plaintiff initiated this declaratory action to resolve various coverage issues arising from

underlying state-court actions alleging that ERO's employee sold alcohol to a visibly intoxicated

---

[1]The plaintiffs allege in the underlying state-court actions that the ERO Defendants violated NMSA § 60-7A-16 and § 40-11-1 (Dram Shop Act) by selling alcohol to a visibly intoxicated patron.  It is a violation of the Liquor Control Act, [60-7A-1 NMSA 1978], for a person to sell or serve alcoholic beverages to or to procure or aid in the procurement of alcoholic beverages for an intoxicated person if the person selling, serving, procuring or aiding in procurement, knows that he is selling, serving, procuring or aiding in procurement of alcoholic beverages for a person that is intoxicated.

[2]  In its Motion, Plaintiff also seeks a declaration that Giant is not entitled to coverage for the claims made against Giant under any of the insurance policies issued to ERO.  Because this issue is intertwined with those contained in *Plaintiff Federated Mutual Insurance Company's Motion for Summary Judgment of Giant Four Corner's Counter-Claims and supporting Memorandum* (Doc. 145), filed March 21, 2011, it will be resolved in the Court's forthcoming ruling on that motion.

patron, Mr. Pabst,  NMSA § 60-7A-16 and § 40-11-1 (Dram Shop Act).  After purchasing the

alcohol, Mr. Pabst was involved in a two-car accident resulting in numerous fatalities.  The

surviving occupant and family members of the deceased occupants filed two lawsuits for

personal injury and wrongful death ("state-court lawsuits") in New Mexico state court against

ERO, Acorn, PRP, Carl Smith, and Rob Simms (collectively, the "ERO Defendants") and Giant

Four Corners, Inc. ("Giant"), among other entities.[3]  The plaintiffs in the state-court lawsuits

assert claims of: (1) dram-shop liability; (2) negligent hiring, training, supervision, staffing and

retention; (3) spoliation of evidence: (a video tape of the alleged sale and cash register tapes

from the store); (4) liability imputed to Acorn and PRP, as either the alter ego, or joint venture

partner, of ERO; and (5) loss of consortium.  Mot. at 5.

The plaintiffs in the state-court lawsuits also allege that Giant, a company that leased its

liquor license to ERO at the time of the incident, was negligent in leasing its license, and is

jointly and/or vicariously liable for the alleged dram shop act violations.  Mot. at 8.  Giant, in

turn, filed cross-claims against ERO for breach of contract and violation of the New Mexico

Unfair Practices Act in this action, seeking reimbursement for its settlement costs in the state-

court lawsuits.  *See generally Answer, Counterclaim, Cross-Claims, and Third-Party Complaint*

*of Giant Four Corners, Inc.* (Doc. 47), filed February 5, 2010 ("Third-Party Complaint").  Giant

contends that ERO induced it to lease its liquor license to ERO by promising in the Liquor

License Agreement ("Lease Agreement") to: (1) secure suitable liability insurance; and (2)

provide a defense and indemnity to Giant in the event that claims were made against Giant

---

[3]*Ray F. Collins, et al v. Ever-Ready Oil Co., Inc. et al.*, No. CV-2006-00627 (San Miguel
County, N.M. 4th Jud. D. Ct.) and *Maxine Gonzales, et al. v. Ever-Ready Oil. Co., Inc*., No. CV-
2007-00034 (San Miguel County, N.M. 4th Jud. D. Ct.).

arising from ERO's sale of liquor under Giant's license.  *Id.* at ¶ 48.

Plaintiff is not a party to either of the state-court lawsuits.  Plaintiff provided insurance coverage to ERO under Commercial General Liability ("CGL"), Umbrella,[4] and Liquor Liability ("LL") policies.  Mot. at 9.  Although Plaintiff is providing a defense and coverage to ERO under the LL policy, it has denied coverage under the CGL and Umbrella policies pursuant to a liquor-liability exclusion.  Mot. at 10.  Plaintiff seeks declaratory judgment, under 28 U.S.C. § 2201, that it is not required to provide coverage to the ERO Defendants under its CGL and Umbrella policies.  Mot. at 2.

## II.    **Factual Background**

The following facts set forth in Plaintiff's Motion are both material and undisputed.[5]  At the time of the accident, Plaintiff insured the ERO Defendants under the CGL, Umbrella, and LL policies.  ERO is in the business of selling alcohol.  Acorn, a holding company for ERO, and PRP, a sister company of ERO, are additional named insureds on the three insurance policies issued to ERO.  Acorn and PRP were given endorsements for each of the three policies, which state that the additional named insureds must be related agencies.  The additional named endorsement provides:

> [t]he First Named Insured shown in the Declarations [ERO] declares
> that all firms named in the policy (named insureds and additional

---

[4] The Umbrella policy is  a "follow form" policy that provides coverage to the same extent as the CGL policy.

[5] *See* Mot. at 8, 9, 12; ERO Defendants' Resp. at 1; and Defendants Maxine E. Gonzales, Ralph Gonzales, and Ashley Gonzales (collectively referred to as the "Gonzales Defendants") Resp. at 4.  Giant fails to respond in any way to Plaintiff's facts set forth above. Therefore, each of these facts is deemed admitted.  *See* Fed.R.Civ.P. 56(c)(2); D.N.M. LR-Civ. 56.1.  Giant does refute Plaintiff's assertion that it is not entitled to coverage under any of the policies issued to ERO.  Giant's Resp. at 4.  For reasons stated *supra*, that question will be resolved in a forthcoming ruling.

named insureds) are owned and financially controlled by the
same interests.

Plaintiff is providing a defense and coverage to the ERO Defendants under the LL policy.

The LL policy, which provides coverage for damages imposed by reason of the sale of alcohol,

provides in pertinent part:

I.      Insuring Agreement

a.   We will pay those sums that the insured becomes legally
obligated to pay as damages because of "injury" to which
this insurance applies if liability for such "injury" is
imposed on the insured by reason of the selling, serving
or furnishing of any alcoholic beverage.  We will have the
right and duty to defend the insured against any "suit"
seeking damages for "injury" to which the insurance does
not apply.  We may, at our discretion, investigate any
"injury" and settle any claim or "suit" that may result.

Mot. at 9-10 (quoting LL policy).

Plaintiff has denied coverage to the ERO defendants under the CGL and Umbrella

policies based on the following provision:

I.      Insuring Agreement

a.   We will pay those sums that the insured becomes legally
obligated to pay as damages because of "bodily injury" or
"property damage" to which this insurance applies.  We will
have the right and duty to defend the insured against any
"suit" seeking those damages.  However, we will have no
duty to defend the insured against any "suit" seeking damages
for "bodily injury" or "property damage" to which this
insurance does not apply.  We may, at our discretion,
investigate any "occurrence" and settle any claim or "suit"
that may result.

Mot. at 10-11 (quoting CGL policy).

The CGL policy defines "Occurrence" as "an accident, including continuous or repeated

exposure to substantially the same general harmful conditions" and "Property damage" refers to

5

"tangible property."

Mot. at 11 (quoting CGL policy).

The relevant policy exclusions provide, in pertinent part, that:

[t]his insurance does not apply to:

    **a.**    **Expected Or Intended Injury**

      "Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

    **c.**    **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

    (1)    Causing or contributing to the intoxication of any person;

    (2)    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    (3)    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

* * *

    **j.**    **Damage to Property**

    "Property damage" to:

* * *

    (4) Personal property in the care, custody or control of the insured;

Mot. at 11-12 (quoting CGL policy).

Giant has requested that ERO defend and indemnify it against claims raised in the

6

underlying lawsuits pursuant to the terms of the "Lease Agreement" between ERO and Giant. On May 7, 2008, ERO agreed to defend and indemnify Giant. Mot., Ex. 8 (ERO's correspondence to Giant's counsel, dated May 7, 2008, confirming agreement ). ERO did not consult with Federated before agreeing to defend and indemnify Giant under the Lease Agreement, and Federated did not consent. Ultimately, ERO did not pay for Giant's defense or indemnity in the underlying state-court lawsuits.

### III.    Legal Standards

### A.    Summary-Judgment Standard

A motion for summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id.* The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., *475 U.S. 574, 586 (1986). The party* opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248. To meet this burden,

the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

**B.     Insurance Contract Interpretation**

In New Mexico, the construction of an insurance policy is a matter of law which can be decided on summary judgment. *Winters v. Charter Oak Fire Ins. Co.*, 4 F. Supp. 2d 1288, 1291 (D.N.M. 1988); *Adams-Arapahoe Joint Sch. Dist. v. Continental Ins. Co.*, 891 F.2d 772, 774 (10th Cir. 1989). Under New Mexico law, insurance policies are interpreted by the same rules that govern the interpretation of contracts.[6] *Rummel v. Lexington Ins. Co.*, 123 N.M. 703, 708; 945 P.2d 970, 976 (N.M. 1997). The words of the contract are given their ordinary meaning, and the contract must be construed as a whole, including its declarations, endorsements, and any other attachments. *Id.*; *Ivy Nelson Grain Co. v. Commercial Union Ins. Co. of New York*, 80 N.M. 224, 225, 453 P.2d 587,588 (1969). If the insurance contract is clear and unambiguous, the terms must be enforced as written. *Sanchez v. Herrera*, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989).

If there is an ambiguity, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. *Ivy,* 80 N.M. at 225, 453 P.2d at 588 (citations omitted). "Ambiguities arise when separate sections of

---

[6]The parties have stipulated that New Mexico law governs. *See Joint Status Report and Provisional Discovery Plan* (Doc. 78), filed July 15, 2010, at 5; *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180-1181 (10th Cir. 2007)(applying substantive law of state that parties agree controls).

the policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." *Rummel*, 123 NM at 758, 945 P.2d at 976. An ambiguity is construed against the insurer. *Id.*

Where the controversy concerns an exclusion to coverage, the burden is on the insurer to establish that the exclusion applies. *Winters*, 4 F. Supp. 2d at 1291. Generally, exclusion clauses in insurance contracts are construed narrowly. *See Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 705; 832 P.2d 394, 396 (1992); *Rummel*, 123 NM at 759, 945 P.2d at 977. That said, the general rule "cannot be utilized to override the clear and unambiguous terms of an exclusion." *Grisham v. Allstate Ins. Co.*, 1999-NMCA-153, ¶ 13, 138 N.M. 340, 992 P.2d 891.

**III.   Analysis**

    **A.   The Liquor-Liability Exclusion Bars Coverage for the Claims of Dram-Shop Liability and Negligent Hiring, Training, Supervision, Staffing and Retention Claims**

Plaintiff asserts that the liquor-liability exclusion unambiguously precludes coverage for the dram-shop claims against the ERO Defendants. Mot. at 13. Plaintiff further contends that because the negligent hiring, training, supervision, staffing and retention claims are intertwined with the service of alcohol to Mr. Pabst, they are also excluded from coverage. *Id.* at 15. Neither the ERO Defendants, nor the Gonzales Defendants, refute that the exclusion applies to ERO and bars these claims. However, both challenge its applicability to Acorn and PRP by asserting that they are not "in the business" of selling alcohol. Gonzales Defendants' Resp. at 2; ERO Defendants' Resp. at 2. Through lack of response, the ERO and Gonzales Defendants have conceded that the liquor-liability exclusion bars coverage for the dram-shop and negligence

claims pled against ERO.[7] `

Indeed, the Court finds that the liquor-liability exclusion in the CGL policy is unambiguous in its exclusion of the dram-shop and negligence claims. Although New Mexico has not addressed this specific issue, the majority of courts that have interpreted liquor-liability exclusions with identical, or nearly identical, language have found them to be unambiguous and preclusive of coverage for dram-shop claims.[8] *See Williams v. U.S. Fidelity and Guar. Co.,* 854 F.2d 106, 108 (5th Cir.1988). In *Williams*, the court ruled that the liquor-liability exclusion is a "typical provision, free of ambiguity, and which has lent itself to facile and uniform application by a host of states with whose interpretation we agree." *Id.* (citing *Hartford Ins. Co. of Southeast v. Franklin*, 424 S.E.2d 803 (Ga. App. 1992); *Morrison on Behalf of Morrison v. Miller*, 452 So.2d 390 (La. Ct. App. 1984); *Hartford Ins. Co. of Southeast v. Franklin,* 424 S.E.2d 803 (Mass. 1992); *Mitcheson v. Izdepski*, 585 N.E.2d 743 (Mass. 1992); *Sheffield Ins. Co. v. Lighthouse*

---

[7]A party opposing summary judgment bears the burden of informing a court of the reasons, legal or factual, why summary judgment should not be entered or of explaining why it cannot do so pursuant to Rule 56(f). *See* Fed. R. Civ. P. 56(e) and (f). "In short, the nonmovant must carry its burden in the district court in a timely fashion pursuant to Rule 56(e) and Celotex or explain why it cannot pursuant to Rule 56(f)." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998). "Otherwise, the nonmovant acts, or fails to act, at its peril. The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." *Id.* Indeed, where legal argument and support are absent, courts should be "wary of becoming advocates who ... make a party's case for it." *Id. See also Hopkins v. Women's Div., General Bd. of Global Ministries,* 284 F.Supp.2d 15, 25 (D.D.C .2003) (when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded).

[8] In the absence of precedent from the New Mexico Supreme Court, this Court must anticipate how that court would rule and hold accordingly. *Adams–Arapahoe Sch. Dist. No. 28–J v. GAF Corp*., 959 F.2d 868, 871 (10th Cir. 1992). In so predicting, the Court will consider "state-court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir.1988). *See also Delfino v. Griffo*, 2011-NMSC-015, ¶ 20, 150 N.M. 97, 257 P.3d 917 (2011) (noting court's reliance on sister states when establishing a common-law dram-shop cause of action).

*Properties, Inc.*, 234 Mont. 395, 763 P.2d 669 (Mont. 1988); *New Hampshire Ins. Co. v.*

*Hillwinds Inn, Inc*., 373 A.2d 354 (1977); *U.S. Fidelity and Guar. v. Griggs*, 491 A.2d 267 (Pa.

Super. 1985); *Abe's Colony Club, Inc. v. C & W Underwriters, Inc.*, 852 S.W.2d 86 (Tex.

App.1993) for the same proposition)).

      Courts have also ruled that such exclusions bar coverage for negligence claims arising

from the service of alcohol to an intoxicated patron.  *See Prop.-Owners Ins. Co. v. Ted's Tavern,*

*Inc*., 853 N.E.2d 973 (Ind. Ct. App. 2006).  In *Prop.-Owners*, the court held that the liquor-

liability exclusion also barred coverage for negligent hiring, training, and supervising because

such claims were general "rephrasings of the 'core negligence' claim of causing or contributing to

the drunk driving."  *Id.  See also Colony Ins. Co. v. Events Plus, Inc.*, 585 F.Supp.2d 1148, 1154

(D. Ariz. 2008) (regardless of manner in which negligence theories have been pled, they are not

sufficiently separate and distinct from the provision of alcohol so as to avoid application of the

liquor-liability exclusion); *Boudreaux v. Siarc, Inc.,* 714 So.2d 49 (La.Ct.App.1998) (holding that

allegations of negligent training and supervision were not independent of the negligent furnishing

of alcohol to a minor); *Cusenbary v. U.S. Fid. and Guar*. Co., 37 P.3d 67, 70 (Mont. 2001)

(concluding that insured's negligent operation and mismanagement of tavern directly related to

the negligent service or sale of alcohol and was excluded from coverage).

      The liquor-liability exclusion in the CGL policy precludes coverage for "bodily injury" by

reason of "causing or contributing to the intoxication of any person" or "furnishing of alcoholic

beverages to a person under the influence of alcohol."  Mot. at 11 (quoting CGL policy).  This is

exactly what is alleged in the underlying dram-shop liability claim – that ERO is liable because

its employee allegedly sold alcohol to a visibly intoxicated driver.  The dram-shop liability claim

clearly and unambiguously falls within the liquor-liability exclusion.  The claims of negligent

hiring, training, supervision, staffing and retention of that employee also fall within the exclusion because they are directly related to the purportedly negligent sale of alcohol. To conclude otherwise would allow parties to circumvent the intent and meaning of liquor-liability exclusions through the use of artful pleading. *See Colony Ins. Co.*, 585 F.Supp.2d at 1155. Because these claims are premised upon the very type of risk identified in the liquor-liability exclusion, they are precluded from coverage.

      **B.**    **The Liquor-Liability Exclusion Bars Coverage for the Alter-Ego and Joint Venture Liability Allegations against Acorn and PRP**

      Plaintiff claims that the liquor-liability exclusion also applies to Acorn and PRP because the "joint venture/joint enterprise and alter ego allegations in the complaint - which give rise to Acorn and PRP's sole basis for potential liability - demonstrate that Acorn and PRP are in the business of selling alcohol." Mot. at 17. Plaintiff adds that "in order to qualify as additional named insureds under the endorsement, Acorn and PRP must be owned and financially controlled by the same interests and be sufficiently related to ERO such that they too are in the business of selling alcohol." *Id*. at 20.

      The Gonzales Defendants refute that Acorn and PRP are in the business of selling alcohol, noting that the allegations in their state-court complaint, and the affidavit of the President of ERO, Acorn and PRP (attached to their Response to the Motion) establish the opposite. Gonzales Defendants' Resp. at 5-6. They further claim that applying the exclusion to alter egos *who are not in the business of selling alcohol* conflicts with the language of the exclusion, resulting in an ambiguity that must be resolved in their favor. *Id*. at 12 (emphasis added). The ERO Defendants dispute that representing Acorn and PRP as owned and financially controlled by the same interests establishes that they are also in the business of selling alcohol. ERO Defendants' Resp. at 6. They also claim that such an interpretation conflicts with the provision stating that "this

endorsement will not waive the rights of recovery as a claimant which would be valid if not shown as an additional named insured." *Id.*

As Plaintiff notes, courts have applied liquor-liability exclusions to alter-ego and joint venture theories of liability. In *First Fin. Ins. Co. v. Roach,* 80 F.3d 426, 429 (10th Cir. 1996), the Tenth Circuit affirmed the lower court's ruling that the liquor-liability exclusion barred coverage of state-court claims seeking to pierce the corporate veil and hold a country club bar owner personally liable for the sale of alcohol. The Tenth Circuit agreed with the district court's reasoning that any liability the owner "'would have in the underlying state-court action would necessarily stem from the serving [of alcohol] to an already intoxicated person'" and "'the ruling that there is no coverage for the insured ... would apply to the defense of [the owner] as well.'" *Id.* (quoting Appellants' App. Vol. II at 385).

*In Essex Ins. Co. v. Tri-Area Amusement Co.*, 2010 WL 148381, * 7 (N.D.W. Va. 2010) (unpublished),[9] the court ruled that a liquor-liability exclusion barred coverage for a claim against its insured, a company that provided vending and amusement machines to bars, of joint venture liability with the bar that served the alcohol. The court in *Essex* determined that it did not matter whether the company was actually engaged in the business of selling alcohol, nor did it have to adjudicate the underlying facts in the state-court action, in order to determine coverage. *Id.* Rather, the court found that should a partnership or joint venture be established, it would place the company in the business of selling alcohol and trigger the exclusion. *Id.*

As in *Essex*, the Court need not resolve the factual dispute of whether Acorn and PRP are in the business of selling alcohol in order to determine coverage because any liability imputed to

---

[9]Pursuant to 10th Cir. R. 32.1, unpublished opinions, though not precedential, may be cited for their persuasive value.

Acorn and PRP would necessarily be premised on the furnishing of alcohol to an allegedly intoxicated person. No separate liability exists merely because Acorn or PRP are alleged to be the alter-egos or joint partners of ERO or in a joint venture with ERO. Rather, these doctrines are used to impute liability for the acts of a corporation or partner. *See Scott v. AZL Res., Inc.*, 107 N.M. 118, 121, 753 P.2d 897, 900 (1988) (alter-ego theory involves an attempt to pierce the corporate veil and recognize that the "subsidiary is a mere business conduit for the parent or ... [there] is such unity of interest and ownership that the individuality or separateness of the two corporations has ceased" for purposes of liability); *Wigley Enter., Inc. v. Broadway Vista Partners*, 115 P.3d 822, 825-826 (N.M. Ct. App. 2005) (joint venture doctrine is predicated on a partnership for a single transaction or a common purpose). Under either theory, liability would only attach if ERO were found liable, and any liability imputed to Acorn or PRP would be premised upon the very conduct excluded by the CGL policy. Accordingly, the liquor-liability exclusion also precludes coverage for the alter-ego/joint venture allegations against Acorn and PRP.

### C.    Coverage Does Not Exist for Giant's Cross-Claims Against ERO

Plaintiff contends that Giant's breach of contract claim, premised on ERO's failure to defend and indemnify it pursuant to the Lease Agreement, is excluded from coverage because ERO violated the voluntary payment provision in the CGL policy by agreeing to defend and indemnify Giant without Plaintiff's knowledge or consent. *Id*. at 12, 24-25. The voluntary payment provision prohibits insureds from "voluntarily mak[ing] a payment, assum[ing] any obligation, or incur[ing] any expense, other than for first aid, without [the insured's] consent. *Id*. at 12 (quoting CGL policy). Plaintiff also asserts that coverage for the breach of contract claim falls under the liquor-liability exclusion because "the underlying damages Giant seeks to recover

were paid to the underlying plaintiffs for the bodily injury caused by the sale of alcohol to Papst." Mot. at 24.

Giant responds that it does not seek insurance coverage for its claims against ERO. Giant's Resp. at 3. The ERO Defendants fail to respond to the argument that ERO violated the voluntary payments provision, instead categorizing the Lease Agreement as an "insured contract" under the CGL policy and asserting that obligations stemming from it are, therefore, covered. ERO Defendants' Resp. at 4. Specifically, the ERO Defendants note that although the CGL policy excludes coverage for contractual liability claims, it makes an exception for "insured contracts," defined as "[the] part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' or property damage' to a third party or organization." *Id*. at 4 (quoting CGL policy). Plaintiff replies that the ERO Defendants cannot use this exception to avoid application of the liquor-liability exclusion. Reply at 7.

Even if ERO had not conceded that it violated the voluntary payment provision, the liquor-liability exclusion would, indeed, bar coverage for the breach of contract claim. Although New Mexico has not addressed the scope of exceptions to contractual liability exclusions, courts that have analyzed such exceptions have determined that they do not extend to, or override, other exclusions set forth in an insurance policy. In *Federal Ins. Co. v. Tri-State Ins. Co.*, the Tenth Circuit rejected the insured's argument that the insured contract exception modified a separate operations exclusion. The court stated that "[t]here is no indication that the 'contractual exclusion' somehow trumps the 'operations exclusion.' Because the exclusions are separate, even if the 'insured contract' exception to the 'contractual exclusion' applies so that the 'contractual exclusion' would be ineffective, the 'operations exclusion' still bars [coverage]." 157 F.3d 800,

15

805 (10th Cir. 1998). *See also Alea London Ltd. v. Canal Club, Inc.*, 231 P.3d 157, 160-162

(Okla. Civ. App. 2010) (holding that even if a judgment awarded in an underlying lawsuit could

qualify for coverage under the insured contract exception to contractual liability exclusion, the

liquor-liability exclusion barred such coverage); *James v. Burlington Northern Santa Fe Railway*

*Co.*, 2007 WL 2461685, *6-*7 (D. Ariz.) (unpublished) (insured contract exception to contractual

liability exclusion does not, by its own terms or implication, modify any of the other policy

exclusions); *Heinz-Gert K. GRM v. Great Lakes Gen. Agency*, 2004 WL 2674594, *4 (Ohio App.

9 Dist.) (insurance contract "clearly excludes coverage for damages arising out of an assault and

battery even [for damages] for 'bodily injury' [assumed] in an 'insured contract'"); *Scottsdale*

*Ins. Co. v. Ou Interests, Inc.*, 2005 WL 2893865, *8 (N.D. Cal.) (unpublished) (interpretation that

exception to the contractual liability exclusion applies to all other exclusions set forth in the

insurance policy is unreasonably broad; limited exception "does not purport to except liabilities

assumed by the insured in incidental contracts from other exclusions in the policy").

      Even though the Lease Agreement falls within the insured contract exception to the

contractual liability exclusion, the limited exception does not modify or abrogate the liquor-

liability exclusion. The Court is persuaded with the reasoning in the cases determining that the

exception to one exclusion cannot be used to avoid the application of another exclusion. Because

Giant seeks reimbursement from ERO for monies that it paid to plaintiffs in the underlying

lawsuits for "bodily injury" stemming from the sale of alcohol to an intoxicated patron, the

liquor-liability exclusion applies and operates to preclude coverage of Giant's breach of contract

claim.

      Plaintiff further asserts, and ERO does not dispute, that Giant's claim under the New

Mexico Unfair Practices Act ("UPA"), is not entitled to coverage. Mot. at 26. The Court agrees.

Giant seeks economic damages caused by ERO's alleged misrepresentation of services, yet the CGL policy provides coverage for either "bodily injury," or "property damage," which is defined as "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." Mot. at 10-11. Economic harm clearly does not constitute bodily injury or harm to tangible property. In *Miller v. Triad Adoption & Counseling Serv., Inc.*, 2003-NMCA-055, ¶ 13, 133 N.M. 544, 65 P.3d 1099, the New Mexico Court of Appeals ruled that financial injury alleged in a complaint did not constitute bodily injury for purposes of the insurer's duty to defend the insured. In *Sadler v. Pacific Indem. Co.*, 633 Fed. Appx. 560 (10th Cir. 2010 ) (unpublished) the Tenth Circuit, when applying New Mexico law, stated that a claim for misrepresentation that does not cause "bodily injury" or "property damage" is not covered under a general liability policy. Coverage does not exist for the UPA claim because it does not involve bodily injury or damage to a tangible property.

### E. The Intended Injury and Personal Property Exclusions Bar Coverage for the Spoliation Claim

The plaintiffs in the underlying lawsuits allege that videotapes and sales receipts were intentionally and maliciously destroyed in order to defeat or disrupt prosecution for the improper sale of alcohol and to prejudice their ability to prove their case, despite a request to preserve the evidence. Mot. at 6. New Mexico recognizes the tort of intentional spoliation of evidence, defined as "the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action." *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 649, 950 P.2d 185, 189 (1995), *overruled on other grounds, Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148.[10]

---

[10] To prevail on a claim for intentional spoliation of evidence, a plaintiff must prove: (1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3)

Plaintiff contends that several provisions of the CGL policy preclude coverage for the spoliation claim. Mot. at 20. The ERO Defendants fail to respond. The Court finds that the intended injury and personal property exclusions bar coverage for the spoliation claim. The intended injury exclusion in the CGL policy states that coverage is excluded for "'[i]njury' expected or intended from the standpoint of the insured." Mot. at 11 (quoting CGL policy). Because intentional spoliation requires a showing that evidence was destroyed with the intent to harm another's recovery in a civil action, and that is the harm alleged in the state-court complaints, the claim clearly falls within the expected/ intended injury exclusion, precluding coverage. *See Erie Ins. Exchange v. Lansberry,* 2008 WL 852453, *9 (Ohio App. 2008). In *Erie,* the court ruled that where the complaint alleged that the destruction of the camera was intentional and malicious, the spoliation claim clearly fell within the intentional acts exclusion. *Id. See also Capano Mgmt. Co. v. Transcon Ins. Co.*, 78 F.Supp.2d 320, 325 (D. Del. 1999) (intentional act exclusion barred coverage for spoliation claims); *Union Pump Co. v. Centrifugal Tech., Inc*., 2009 WL 3015076, *5 (W.D. La.)(unpublished) (intentional destruction of evidence is barred by the intentional act exclusion). Accordingly, the intended injury exclusion operates to preclude coverage for the spoliation claim.

The personal property exclusion also bars coverage for the spoliation claim. The CGL policy specifically excludes coverage for damage to "personal property in the care, custody and control of the insured." Mot. at 12 (quoting CGL policy). Courts have denied coverage for spoliation claims where the property damaged or destroyed was the insured's personal property.

---

the destruction, mutilation, or significant alteration of the potential evidence; (4) intent on the part of the defendant to disrupt or defeat the lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages. *Coleman,* 120 N.M. at 649, 950 P.2d at 189.

In *Council v. Paradigm*, the court ruled that a spoliation of evidence claim, predicated on the loss or destruction of a videotape, was not entitled to coverage because of a policy exclusion for damage to the insured's own property.  133 F.Supp.2d 1339, 1343 (M.D. Florida 2001)  *See also Omega Forensic Eng'g, Inc. v. RLI Ins. Co.*, 682 F.Supp.2d 1336, 1343 (S.D. Fla. 2010) (claim for spoliation of defective water heater excluded from coverage because it was personal property in the care, custody and control of the insured).[11]  Because the videotapes and sales receipts were ERO's personal property and in its care, the spoliation claim is excluded from coverage.

IV.     <u>Conclusion</u>

The liquor-liability exclusion bars coverage for the dram-shop and negligence claims against ERO; the alter-ego/joint venture liability allegations against Acorn and PRP; and the breach of contract cross-claim against ERO.  The intended injury and personal property exclusions also bar coverage of the spoliation claim against ERO.  Further, coverage does not exist for the cross-claim against ERO under the New Mexico Unfair Practice Act because the claim for misrepresentation does not constitute bodily injury or property damage.  Finally, the question of whether Giant is entitled to coverage under any of the policies issued to ERO will be addressed in a forthcoming ruling.

---

[11]The plaintiffs in the underlying lawsuit also allege in their spoliation of evidence claim that the defendants' actions constituted "negligence as a matter of law," and breached their duty and legal obligation under  Section 11.5.6.8(E) NMAC 2004, "to provide a fully operational VHS or digital security surveillance system library that records a continuous unobstructed view of the service counter area ... and to maintain a VHS or digital library of all [recorded] in-store transactions ... for a period of not less than twenty business days."  Mot., Ex.1. It is unclear from the four corners of the complaint whether plaintiffs are also attempting to allege a claim of negligent spoliation.  New Mexico does not recognize negligent spoliation of evidence as a separate tort, determining instead that where there is a contractual or statutory duty to preserve evidence, and that evidence is lost, an adverse evidentiary instruction may be given to the jury. *Coleman,* 120 N.M. at 649, 950 P.2d at 189.  However, even if New Mexico were to recognize negligent spoliation of evidence as a separate claim, it would still be excluded from coverage by the "care, custody and control" exclusion in the CGL policy.

WHEREFORE,

**IT IS ORDERED** that *Plaintiff Federated Mutual Insurance Company's Motion for Summary Judgment on its Amended Complaint and Supporting Memorandum* (Doc. 146), filed March 21, 2011 ("Motion") is **GRANTED** as to the claims for dram-shop liability, negligence and spoliation against ERO, the alter-ego and joint venture liability allegations against Acorn and PRP, and Giant's cross-claims against ERO.   The issue of whether Giant is entitled to coverage under any of the policies issued to ERO will be addressed in a forthcoming ruling on *Plaintiff Federated Mutual Insurance Company's Motion for Summary Judgment of Giant Four Corner's Counter-Claims and Supporting Memorandum* (Doc. 145), filed March 21, 2011.

Dated March 9, 2012.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorney for Acorn Ventures, Inc., Ever-Ready Oil Co., Inc., P.P., Inc., Ron Sims & Carl Smith:
    Jeffrey A. Dahl
    Kurt Wihl
    Keleher & McLeod, P.A.
    Albuquerque, NM

Attorneys for Western States Insurance Group, Inc. & Maggie Anderson:
    Josh E Eden
    Willam P. Gralow
    Megan Day Hill
    Mark Daniel Trujillo
    Civerolo, Gralow, Hill & Curtis, P.A.
    Albuquerque, NM

Attorneys for Ashley Renee Gonzales, Maxine E. Gonzales & Ralph Gonzales:
        David P. Garcia
        Erin B. O'Connell
        Ray M. Vargas
        Garcia & Vargas LLC
        Santa Fe, NM

Attorneys for Federated Mutual Insurance Company:
        Laura J. Hanson
        Meagher & Greer
        Minneapolis, MN

        Thomas M. Hnasko
        Santa Fe, NM

Attorneys for Giant Four Corners, Inc.
        Lynn Rada
        San Antonio, TX
        Jeff Ray
        El Paso, TX

        Robert E. Valdez
        Ray, Valdez, McChristian & Jeans, P.C.